UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 99-1883(GK) |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | : | FILED |
| Defendants. | : | SEP 1 1 2003 |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION

Plaintiff, Judicial Watch, Inc., brings this action against Defendants, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks to obtain documents relating to federal government databases or computer systems created in response to abortion clinic violence. The matter is before the Court on Defendant FBI's Motion for Summary Judgment. Upon consideration of the motion, opposition, reply, and the entire record herein, for the reasons stated below, Defendant FBI's Motion for Summary Judgment is **granted**.



I.   **BACKGROUND**[1]

On March 24, 1999, Plaintiff submitted identical FOIA requests to the DOJ, FBI Headquarters, and the FBI's Washington Field Office ("WFO") seeking: "all correspondence, memoranda, documents, records, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, tape recordings, notes, electronic mail, and other documents and things" relating to, among other things, any data bases or computer systems created in response to abortion clinic violence, including a database known as "VA-AP-CON." See Compl. Ex. 1 (copies of the three letters, dated March 24, 1999).[2]

---

[1]      Pursuant to Local Civil Rule 7.1(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  The Court thus takes these facts from Defendant FBI's Statement of Material Facts.    Unless  otherwise  noted,  the  Court  states  only uncontroverted facts.

[2]      In particular, Plaintiff requested material relating to the following six topics:

    1.   [A] data base or computer system maintained by the FBI, . . . named, referred to, or abbreviated as, VA-AP-CON."

    2.   "[A]ny  and  all  databases  or  computer  systems containing biographical or other information pertaining to leaders and members of pro-life organizations and/or pro-life   activists,   and   pro-life   organizations, including, but not limited to:

        a. Dr. Wanda Franz;
        b. Randall Terry;
        c. National Right to Life Committee;

2

Each of Plaintiff's requests also asked for "a blanket fee waiver on behalf of the public interest," asserting that as a representative of the news media and of the public, it would "use the requested material to promote accountable government." Compl. Ex. 1 at 3,4.

On April 5, 1999, the FBI WFO notified Plaintiff that its FOIA request had been received and was broken into six separate search requests for the VA-AP-CON database, three individuals, and two organizations (the National Right to Life Committee and the

---

      d. Judith Brown and the American Life League;"

3. "[A]ny and all databases or computer systems created in response to abortion clinic violence;"

4. "[A]ny and all communications to and from the Department of Justice and the Federal Bureau of Investigation pertaining to the databases or computer systems described [above] . . .."

5. "[A]ny and all communications to and from FBI headquarters and the Washington, D.C. field office. . . pertaining to the databases or computer systems described [above]."

6. "[W]ith respect to the databases and/or computer systems referred to [above], any and all communications to and from either the Department of Justice or FBI headquarters and the Washington, D.C. field office of the FBI. . . pertaining to whether the creation of databases or computer systems violated any laws, rules, or regulations, including those promulgated in response to any FBI or federal investigation of 'CISPES,' the Committee in Solidarity with the People of El Salvador, and its leaders and members."

Compl. Ex. 1 (copies of the three letters containing Plaintiff's FOIA requests, dated March 24, 1999).

American Life League).  <u>See</u> Def. FBI's Ex. B (FBI WFO's April 5, 1999 letter), attached to Def.'s Ex. 1, Third Declaration of Scott A. Hodes, Acting Chief of the FBI's Freedom of Information-Privacy Acts Litigation Unit ("Hodes Decl.").  The April 5, 1999 letter also informed Plaintiff that the WFO needed privacy waivers before the agency could begin to search for documents concerning the three individuals, that the WFO had no responsive documents concerning the National Right to Life Committee, and that given the voluminous responsive records concerning VA-AP-CON and the American Life League, the WFO was referring Plaintiff's FOIA request to the FBI Headquarters for processing.  <u>Id.</u>

Plaintiff alleges the FBI WFO's April 5, 1999 letter was "non-responsive", Compl. at ¶ 7, and that it had received no "substantive response" from the FBI concerning its FOIA request as of April 23, 1999, Pl.'s Statement of Material Facts in Dispute at ¶ 4.  Thus, on July 9, 1999, Plaintiff filed the present action, seeking declaratory and injunctive relief against Defendants concerning its FOIA request.  Specifically, Plaintiff requested a declaration that the Defendants' failure to produce the requested documents was unlawful and an injunction ordering Defendants "to make the requested documents available to Plaintiff immediately." Compl. at 4 ("Wherefore" ¶).

On August 16, 1999, the FBI Headquarters responded to Plaintiff's FOIA request, advising Plaintiff that the search for

documents concerning the three individuals would not be processed without privacy waivers.  On October 22, 1999, after Plaintiff failed to provide sufficient waivers concerning the three individuals, the FBI closed those three requests. On October 6, 1999, the FBI completed processing Plaintiff's request concerning the American Life League and released those responsive documents to Plaintiffs, without charging any fee.  Thus, only Plaintiff's requests for information concerning the VA-AP-CON database and the National Right to Life Committee from its initial FOIA request remained before the FBI.

On October 22, 1999, the FBI denied Plaintiff's fee waiver request, finding that "based on the information presented...in [the] March 24, 1999 letter, [Plaintiff's] asserted public interst is too vague and speculative to warrant a fee waiver." Def. FBI's Ex. F (FBI's October 22, 1999, letter), attached to Hodes Decl. The FBI also estimated that there were over 100,000 pages of potentially responsive documents to Plaintiff's VA-AP-CON database request, with estimated duplication fees of $11,590.  The FBI then requested that Plaintiff indicate its agreement to pay for either a set amount of or the entire amount of duplication fees that might be incurred during the processing of its VA-AP-CON database request.  At the same time, the FBI informed Plaintiff that the size of its request was such that it involved "the longest waiting

period for processing," and encouraged Plaintiff to contact the FBI
to discuss narrowing its request.  Id. at 2.

On October 27, 1999, the FBI completed processing the request
concerning the National Right to Life Committee and released the
responsive documents to Plaintiffs, without charging any fee.
Thereafter, the FBI moved to partially stay the proceedings in this
matter, and on March 31, 2001, the Court partially granted the
FBI's motion, allowing them until July 31, 2003 to respond to the
remainder of Plaintiff's FOIA request, i.e., the VA-AP-CON database
request.  See March 31, 2001 Order.  In doing so, the Court urged
the parties "to seriously continue discussions toward narrowing the
scope of the FOIA request, especially given the limited resources
available to the FBI and the extraordinary nature of the request."
March 31, 2001 Slip Op. at 8-9.

On September 6, 2001, the FBI informed Plaintiff that "it
would release approximately 500 pages of previously processed
material responsive to Plaintiff's request," if Plaintiff would
agree to pay duplication fees of approximately $40.  Def. FBI's
Statement of Material Facts at ¶ 11 (citing Def. FBI's Ex. J (FBI's
September 6, 2001, letter), attached to Hodes Decl.).  In addition,
the FBI reiterated that because Plaintiff's request for a fee
waiver had been denied, the rest of its request would only be
processed after Plaintiff indicated its "willingness to pay either
a particular amount or the entire estimated duplication fees of

$11,590" for all the records sought.  Def. FBI's Ex. J (FBI's September 6, 2001, letter) at 1, attached to Hodes Decl.  The FBI also asked Plaintiff to consider narrowing its request in order to reduce both the duplication fees and the time needed to complete the request.

On September 14, 2001, Plaintiff sent a letter to the FBI indicating its "wish to receive the 500 pages of records, and...pay the $40.00 in costs."  Def. FBI's Ex. K (Pl.'s September 6, 2001, letter) at 1, attached to Hodes Decl. (emphasis omitted).  At the same time, Plaintiff indicated its "willingness to narrow the scope of [its] request" and included instructions for narrowing the request.  Id.  Plaintiff then asked the FBI to advise it on the time and fees that would be required to process the narrowed request and indicated that it was continuing to request a fee waiver for the records it sought.

On December 4, 2001, the FBI released to Plaintiff 526 pages of responsive documents concerning the VA-AP-CON database and requested payment of $46.20 in duplication fees for those documents.  The FBI also stated that while it "appreciate[d]" Plaintiff's attempt to narrow its search request, processing of the narrowed request would still require the FBI to "review and process, page-by-page, the same files that likely contain records responsive to your initial request."  Def. FBI's Ex. L (FBI's December 4, 2001, letter) at 2, attached to Hodes Decl.  The FBI

7

stated that there were more than approximately 115,000 pages of
possibly responsive documents that would need to be searched and
urged Plaintiff to further seek to modify its request.   The FBI
then reiterated that Plaintiff's fee waiver request had been denied
and estimated that it would take a minimum of 200 hours and $3,200
in search fees, in addition to duplication fees, to process
Plaintiff's request regarding the VA-AP-CON database.   Id.
Finally, the FBI stated that in order to continue work on
Plaintiff's request, Plaintiff had to indicate its willingness to
pay the fees incurred within 60 days, or the request would be
closed.

During the next sixty days, Plaintiff neither paid the $42.60
duplication fee to the FBI for the VA-AP-CON database documents
already released nor indicated its willingness to pay the
additional fees required by the FBI to complete processing its
request.   Accordingly, the FBI closed Plaintiff's FOIA request
concerning the VA-AP-CON database and moved for summary judgment in
this action.

## II.   STANDARD OF REVIEW

Summary judgment will be granted when the pleadings,
depositions, answers to interrogatories and admissions on file,
together with any affidavits or declarations, show that there is no
genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law.   See Fed. R. Civ. P.

8

56(c).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party.  McKinney v. Dole, 765 F.2d 1129, 1135 (D.C. Cir. 1985); see also Liberty Lobby, 477 U.S. at 255.

However, once the moving party makes its initial showing, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324; McKinney, 765 F.2d at 1135.  Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

In moving for summary judgment, the FBI argues that it properly closed the uncompleted portions of Plaintiff's FOIA request based on Plaintiff's failure to indicate its willingness to pay the estimated fees for processing the request, as well as Plaintiff's failure to pay the outstanding duplication fees for those responsive documents already released by the FBI.  In response, Plaintiff disputes neither its failure to indicate its

willingness to pay the estimated fees to finish processing the request nor its failure to pay those fees for documents already released.   Instead, Plaintiff argues that these failures are irrelevant because it is entitled to a full fee waiver for its FOIA request.   However, the FBI contends that Plaintiff's fee waiver claims are not properly before the court because Plaintiff has failed to exhaust its administrative remedies regarding denial of its fee waiver request.[3]

## A.   Plaintiff's Fee Waiver Claims Are Not Properly Before the Court.

Before a party can seek judicial review under FOIA, exhaustion of administrative remedies is required. Dettman v. U.S. Dept. of Justice, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986); see also Trueblood v. U.S. Dept. of Treasury, 943 F.Supp. 64, 68 (D.D.C. 1996) ("Exhaustion of a plaintiff's administrative remedies is a condition precedent to judicial review of a FOIA suit."). In this case, Plaintiff may have constructively exhausted its administrative remedies with regard to the FBI's initial untimely processing of its FOIA request. See 5 U.S.C. § 552(a)(6)(C) (agency's failure to substantively respond to a FOIA request within 20 business days of receipt constitutes full or constructive exhaustion of the requester's administrative remedies); Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 63-64 (D.C. Cir. 1990) (stating

---

[3]     Defendants also argue that even if the Court did consider Plaintiff's fee waiver claims, the FBI properly denied its request.

that "constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows
immediate recourse to the courts to compel the agency's response to
a FOIA request...[b]ut once the agency responds to the FOIA
request, the requester must exhaust his administrative remedies
before seeking judicial review").

However, Plaintiff now claims that the constructive exhaustion
that allowed it to originally bring this enforcement action applies
to all aspects of its FOIA request, including its request for a fee
waiver.   When examining multiple claims of administrative
exhaustion for one FOIA request, our Court of Appeals explicitly
stated that it is "clear that a plaintiff may have exhausted
administrative remedies with respect to one aspect of a FOIA
request--and thus properly seek judicial review regarding that
request--and yet not have exhausted her remedies with respect to
another aspect of a FOIA request." Dettman, 802 F.2d at 1477; see
also Pollack v. Dept. of Justice, 49 F.3d 115 (4th Cir. 1995)
(finding that constructive exhaustion of enforcement issues for
FOIA request did not extend to exhaustion of fee issues for that
same request).

In this case, after Plaintiff brought suit seeking to enforce
the FBI's processing of its FOIA request, the FBI did begin to
process that request, and in the process of doing so, denied
Plaintiff's request for fee waiver.   See Def. FBI's Ex. F (FBI's
October 22, 1999, letter), attached to Hodes Decl.   The FBI

11

contends that Plaintiff never sought an administrative appeal of that denial, and Plaintiff presents no evidence to the contrary. Moreover, Plaintiff's Complaint does not even mention the fee waiver issue. See Compl. at 4 (seeking only a declaration that the Defendants' failure to provide the requested documents was unlawful and an injunction ordering Defendants "to make the requested documents available to Plaintiff immediately").

Consequently, as there is no evidence that Plaintiff has exhausted its administrative remedies regarding the FBI's denial of the request for a blanket fee waiver, those claims are not properly before the Court. See Crooker v. U.S. Secret Service, 577 F.Supp. 1218, 1219 (D.D.C. 1983) (finding no exhaustion of administrative remedies where plaintiff "failed to respond to or appeal defendant's request for payment").[4]

---

[4]     Because the Court finds that Plaintiff has not exhausted its administrative remedies with respect to the fee waiver issue, there is no need to examine whether Defendant's denial of that request was proper.  However, the Court notes that other courts in this district have upheld denial of Plaintiff's similarly non-specific fee waiver, i.e., describing only the general actions the organization took to disseminate the information it collected, but not describing how dissemination of the specific information it was currently seeking would aid the public interest.  See Judicial Watch v. U.S. Dept. of Justice, 133 F.Supp.2d 52, 54 (D.D.C. 2000) (J. Robertson) (finding that Judicial Watch's "perfunctory assertions were too ephemeral to satisfy the [FOIA] standard" for granting a fee waiver) (internal citation and quotations omitted); Judicial Watch v. U.S. Dept. of Justice, 2000 WL 33724693, *5 (D.D.C. Aug. 17, 2000) (J. Kollar-Kotelly) (upholding fee waiver denial, in part, because the analysis under FOIA "focuses on the subject and impact of the particular disclosure, not the record of the requesting party").

**B.    The FBI Properly Closed the Uncompleted Portions of the FOIA Request After Plaintiff Failed to Either Pay or Indicate Its Willingness to Pay Appropriate Fees.**

Under      FOIA,      each      agency      must      "promulgate regulations...specifying the schedule of fees applicable to the processing of requests under this section...."  5 U.S.C. § 552(a)(4)(A)(i).  To meet this obligation, Defendants promulgated regulations stating, in pertinent part, that

> [w]hen a component determines or estimates that the fees to be charged under this section will amount to more than $25.00, the component shall notify the requester of the actual or estimated amount of the fees, unless the requester has indicated a willingness to pay fees as high as those anticipated....  In cases in which a requester has been notified that actual or estimated fees amount to more than $25.00, the request shall not be considered received and <u>further work shall not be done on it until the requester agrees to pay the anticipated total fee</u>. Any such agreement should be memorialized in writing. A notice under this paragraph will offer the requester an opportunity to discuss the matter with Department personnel in order to reformulate the request to meet the requester's needs at a lower cost.

28 C.F.R. § 16.11(e) (emphasis added).

FOIA also provides that an agency may require advance payment of fees for processing requests if "the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250."  5 U.S.C. § 552(a)(4)(A)(v).    Accordingly, Defendants have formulated regulations stating that it will seek advance payment of FOIA fees in the following situations:

> (2) Where a component determines or estimates that a total fee to be charged under this section will be more

13

than $250.00, it may require the requester to make an advance payment of an amount up to the amount of the entire anticipated fee before beginning to process the request, except where it receives a satisfactory assurance of full payment from a requester that has a history of prompt payment.

(3) Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from that requester.

28 C.F.R. § 16.11(i)(2), (3). Moreover, Defendants have stated that when advance payment for processing FOIA requests is due under these regulations, "the request shall not be considered received and further work will not be done on it until the required payment is received." 28 C.F.R. § 16.11(i)(4) (emphasis added).

In this case, once the FBI began processing Plaintiff's FOIA request, the FBI repeatedly informed Plaintiff that the estimated costs of completing its request regarding the VA-AP-CON database would more than $250--in fact, the FBI estimated that search and duplication would cost almost $15,000--and asked Plaintiff for either prepayment of fees or an indication of its willingness to pay whatever fees would be incurred. See Def. FBI's Exs. F (FBI's October 22, 1999, letter), J (FBI's September 6, 2001, letter), and L (FBI's December 4, 2001, letter), attached to Hodes Decl. After the Plaintiff indicated its willingness to pay the fees for 526 pages of responsive documents concerning the VA-AP-CON database, the

14

FBI released those documents to Plaintiff and requested payment of $46.20 in duplication fees.  The FBI also informed Plaintiff that its FOIA request would be closed if Plaintiff did not respond within 60 days, indicating its willingness to pay the fees that would be incurred to complete the remainder of its request.  See Def. FBI's Ex. L (FBI's December 4, 2001, letter), attached to Hodes Decl.

It is undisputed that over the next sixty days, Plaintiff neither paid the FBI the $42.60 in duplication fees for the VA-AP-CON database documents already released nor indicated to the FBI its willingness to pay the estimated $11,590 in duplication fees and $3,200 in search fees to complete its FOIA request.  In similar circumstances when agencies stopped processing FOIA requests after requesters refused to pay the appropriate fees, courts have granted summary judgment to agencies.  For example, in Trueblood, the plaintiff brought a FOIA enforcement action after the Internal Revenue Service failed to process his request in a timely manner, but then refused to pay the appropriate fees requested by the agency once it started processing his request.  The court found that regardless of when the plaintiff had filed suit to enforce a FOIA request, he still had "an obligation to pay for reasonable copying and search fees assessed by the defendant."  Id., 943 F.Supp. at 68. The court then granted summary judgment in favor of the agency, finding that it had fulfilled its FOIA obligation because while it was willing "to turn over the requested documents on the plaintiff's

15

filing of the requested fee" of $46.65, plaintiff refused to pay those fees.  Id., 943 F.Supp. at 69; see also Pollack, 49 F.3d at 119-20 (rejecting plaintiff's argument that "once he commenced an action in enforce his FOIA request, he was relieved of any obligation to pay for documents" because there was no statutory or regulatory authority stating that "when an agency acts untimely, it is obliged to provide the requester with unlimited documents free of charge").

Accordingly, the Court finds that the FBI properly closed the uncompleted portion of Plaintiff's FOIA request in accordance with both 28 C.F.R. § 16.11(e), which allows work on requests to stop until "the requester agrees to pay the anticipated total fee" when the estimated cost is more than $250, and 28 C.F.R. § 16.11(i)(2),(3), and (4), which allows an agency to stop work on a FOIA request when the requestor has either not made an advance payment on requests with estimated completion costs of more than $250 or has failed to make a previous FOIA payment.

## IV. CONCLUSION

Plaintiff failed to exhaust its administrative remedies with regard to the FBI's denial of its request for a blanket fee waiver, and thus its claims regarding that request are not properly before this Court.  In addition, Plaintiff failed to indicate its willingness to pay the estimated fees to finish processing its FOIA request and also failed to pay those fees for documents already

released.   Accordingly, the Court finds that the FBI properly closed
Plaintiff's FOIA request based on these failures by Plaintiff, and
Defendant  FBI's  Motion  for  Summary  Judgment  is  **granted**.   An
appropriate Order will issue with this opinion.

_Sept. 11, 2003_
Date

_Gladys Kessler_
Gladys Kessler
United States District Judge

**COPIES TO:**

Larry Klayman
Paul J. Orfanedes
Judicial Watch, Inc.
501 School Street, S.W.,
Ste. 725
Washington, D.C. 20024

Anne L. Weismann
Karyn Temple
United States Department of Justice
Federal Programs Branch, Rm. 1018
901 E. Street NW
Washington, D.C. 20530